```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
PETER EICHIE,                                                    :
                                                                 :
                              Plaintiff,                         :
                                                                 :           21-cv-10712 (LJL)
            -v-                                                  :
                                                                 :           OPINION AND ORDER
KILOLO KUAKAZI, ACTING COMMISSIONER OF                           :
SOCIAL SECURITY for the UNITED STATES,                           :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/01/2023

LEWIS J. LIMAN, United States District Judge:

Plaintiff Peter Eichie ("Plaintiff"), proceeding *pro se*, commenced this action against Kilolo Kuakazi, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), seeking a writ of mandamus to enforce the Commissioner's decision, dated May 28, 2021, awarding him Supplemental Security Income benefits under the Social Security Act. Dkt. No. 1 ("Complaint").

Defendant has filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, or in the alternative, a motion for summary judgement pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 17.

For the following reasons, Defendant's motion to dismiss is granted.

## BACKGROUND

When considering a motion to dismiss under Rule 12(b)(1), a court "may refer to evidence outside the pleadings." *Markova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). As such, the following facts are taken from the parties' submissions.

In 2001, Plaintiff's parent and representative Terri Simmons ("Simmons") filed for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). Dkt. No. 1 at ECF p. 2. Plaintiff received disabled child SSI benefits from May 2001 until his eighteenth birthday in February 2018. Dkt. No. 18 ¶ 2(a). Through March 2018, Plaintiff was considered a disabled adult and continued receiving SSI benefit payments. *Id*. Simmons acted as Plaintiff's representative payee from May 2001 through February 2019. *Id*. On May 21, 2018, the Social Security Administration ("SSA") sent a letter to Simmons, on behalf of Plaintiff, informing her that the SSA was reviewing Plaintiff's case, because Plaintiff had reached the age of eighteen and the SSA was required to ensure that Plaintiff was disabled under the disability rules for adults. *See* Dkt. No. 18-1. By letter dated July 12, 2019, Plaintiff was informed by the SSA that, as of April 1, 2019, he no longer qualified for SSI benefits under the Act's definition of disability for adults, and that his SSI benefit payments would cease on June 30, 2019. Dkt. No. 18-1 at ECF p. 2. The letter also contained information on how to appeal the decision, noting that the appeal had to be filed within ten days for payments to continue. *Id*. Plaintiff appealed and requested reconsideration of his disability decision on December 12, 2019. *See* Dkt. No. 18-3.

In a decision dated May 27, 2021,[1] an Administrative Law Judge ("ALJ") deemed Plaintiff disabled (the "May 2021 Decision"). Dkt. No. 1 ¶ 4; Dkt. No. 18-4 ¶ 18. Plaintiff did not appeal the favorable decision. Dkt. No. 1 ¶ 4. Plaintiff was awarded back payments of $18,533, $6,000 of which was paid to Plaintiff's attorney, while the remaining $12,533 was to be paid to Plaintiff. Dkt. No. 18-5 at ECF p. 2. By letter dated August 13, 2021, Plaintiff was

---

[1] Plaintiff and Defendant disagree whether the Administrative Law Judge's decision was rendered May 27 or May 28, 2021. *Compare* Dkt. No. 1 ¶ 4 (May 27, 2021), *with* Dkt. No. 18 ¶ 2(e) (May 28, 2021). The difference is immaterial.

2

informed his monthly payment of $752 would begin on September 1, 2021. *Id.* Because the amount owed in back payments was more than three times the maximum monthly SSI benefit payment, the letter explained that it was SSA policy to pay the $12,533 in arears in up to three installments with six months between each installment. *Id.* at ECF pp. 2–3. The letter also identified two situations where Plaintiff would be eligible for different payment structures: First, Plaintiff could forego installment payments in favor of a full, upfront payment if he was deemed no longer eligible for SSI benefits or was terminally ill. *Id.* at ECF p. 3. Second, Plaintiff could receive a larger initial payment if he provided proof of current debts or expenses for, *inter alia*, food, clothing, shelter, medicine or medically necessary services, or that he expected expenses for, *inter alia*, medicine or other medically necessary services. *Id.* The first installment payment of $2,382 was sent on August 10, 2021. *Id.*

By letter dated August 20, 2021, Plaintiff was informed that the initial installment payment was returned to the Department of Treasury and that the SSA would not send any more payments to Plaintiff until Plaintiff contacted his local Social Security Office. *See* Dkt. No. 18-6. In September 2021, Simmons applied to be reinstated as representative payee for Plaintiff. Dkt. No. 1 at ECF p. 12. This request was denied by the SSA. Dkt. No. 18 ¶ 2(i). On September 15, 2021, the SSA updated Plaintiff's payment method to a Direct Express debit card. Dkt. No 18 ¶ 2(j).

By letter dated February 15, 2022, Plaintiff was informed that his monthly SSI benefit payments would resume on March 1, 2022 and every month thereafter, because Plaintiff had provided the necessary information for the SSA to resume payments. *See* Dkt. No. 18-8. The February 15 letter also informed Plaintiff that he would be awarded an additional $1,845.50 in arrear payments for the months of nonpayment between the May 2021 Decision and when

payments resumed.  *Id.* at ECF p. 2.  The first installment payment of $2,523 for back payments was reissued on or before February 12, 2022.  *Id*. at ECF p. 3.  Simmons was successfully reinstated as representative payee of Plaintiff on June 28, 2022.  Dkt. No. 23 ¶ 17.  The second installment payment of Plaintiff's back pay was scheduled for August 2022.  Dkt. No. 18 ¶ 2(n).  The record is silent as to whether Plaintiff received this scheduled payment.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint and Petition for a Writ of Mandamus on December 14, 2021.  Dkt. No. 1.  On May 18, 2022, Defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment, along with a supporting memorandum of law, Local Rule 56.1 statement, and supporting declaration.  Dkt. Nos. 17–20.  On July 15, 2022, Plaintiff filed an affidavit in opposition to the motion to dismiss.  Dkt. No. 23.  On July 22, 2022, Defendant filed a reply memorandum of law in further support of its motion.  Dkt. No. 24.

## LEGAL STANDARD

### I.    Pro Se Litigants

Because Plaintiff proceeds *pro se*, the Court is obliged to construe the complaint and submissions liberally, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted).  However, "pro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure."  *Saidin v. N.Y.C. Depot of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).

### II.   Motions To Dismiss Under Rule 12(b)(1) & 12(b)(6)

Subject matter jurisdiction defines the bounds of a federal court's adjudicatory authority.  *See Bender v. Williamsport Area Sch. Dist*., 475 U.S. 536, 541 (1986) ("Federal courts are not

courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."). "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009). The plaintiff bears the burden of proving the instant case is justiciable in federal court. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). Relatedly, a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) requires a decision on the merits of a claim, and therefore, a court must first establish all jurisdictional requirements to adjudicate the claim. *See Okocha v. Disman*, 2012 WL 6860892, at *6 (S.D.N.Y. Oct. 1, 2012), *report and recommendation adopted sub nom. Okocha v. Comm'r of Soc. Sec.*, 2013 WL 163834 (S.D.N.Y. Jan. 15, 2013).

    **A.**    **Mootness**

Mootness is another element of justiciability under subject matter jurisdiction that the court should consider *sua sponte* if not raised by the parties. *See Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) ("[S]ubject matter jurisdiction cannot be waived and may be raised *sua sponte* by the district court."). "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian & Gay Organization v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. Of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). Thus, a district court can dismiss a moot claim for lack of subject matter jurisdiction upon a motion to dismiss under Rule 12(b)(1). *See, e.g., Doyle v.*

5

*Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Dismissal of a case . . . under rule 12(b)(1) is proper . . . [w]hen a case becomes moot [because] the federal courts lack subject matter jurisdiction over the action.").

**B.     Sovereign Immunity and Judicial Review Under the SSA**

Since the defendant in this case is the Commissioner of Social Security, sovereign immunity and this Court's subject matter jurisdiction are implicated at the motion-to-dismiss stage. *See Allen on behalf of Jimenez v. Comm'r of Soc. Sec.*, 2017 WL 1102665, at *2 (S.D.N.Y. Mar. 23, 2017). "The United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 384, 587 (1941)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Insurance Corporation v. Meyer*, 510 U.S. 471, 475 (1994). The SSA is an agency of the federal government and is therefore protected by sovereign immunity, except when waived. Congress waived sovereign immunity in social security cases in limited circumstances, and over limited types of agency decisions. *See* 42 U.S.C. § 405(g), (h).

Administrative actions that are categorized as initial determinations are subject to administrative and judicial review, 20 C.F.R. § 416.1402, while administrative actions that are not categorized as initial determinations are not reviewable administratively or by a court, *id.* § 416.1403. Administrative actions that are eligible for the administrative review and subsequent judicial review include determinations regarding eligibility for and the amount of SSI benefits, whether and to whom a recipient's benefits will be paid to a representative payee, and termination of benefit payments, 20 CFR § 416.1402 (a), (b), (d), (e), because a challenge to these decisions "impact the very status of claimants and beneficiaries," *Dobson v. Comm'r of*

*Soc. Sec.*, 2014 WL 1909363, at *8 (S.D.N.Y. May 12, 2014). In contrast, non-reviewable administrative decisions, such as "[d]enial of a request to be made payee;" 20 CFR § 416.1403(a)(3), are "largely factual and procedural, rendered with little guidance from bodies of regulatory, statutory, and decisional law . . . [such that] a court asked to review such a determination could [not] properly assess the process by which it was reached except by coming to a new, independent decision," *Dobson*, 2014 WL 1909363, at *9.

### C. Motion to Dismiss Under 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

### III. Jurisdiction Under the Mandamus Act

Section 1361 of Title 28 of the United States Code (the "Mandamus Act") provides an alternate, albeit limited, source by which a district court can exercise jurisdiction over a claim

7

under the Act, apart from Section 405(g) or 405(h). *See City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984), *aff'd sub nom. Bowen v. City of New York*, 476 U.S. 467, 483 (1986) ("[I]t is settled in this and other circuits that, notwithstanding the sweeping language of section 405(h), mandamus jurisdiction is available under circumstances where the writ properly would issue."); *Coe v. Saul*, 2020 WL 6729169, at *7 (S.D.N.Y. Nov. 16, 2020) (considering whether mandamus review was appropriate after determining review was unavailable under Section 405(g)); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The Mandamus Act provides jurisdiction to review otherwise unreviewable procedural issues that are not related to the merits of a claim for benefits. *See Clemmons v. Comm'r of Soc. Sec.*, 2012 WL 1107661, at *5 (E.D.N.Y. Mar. 20, 2012) (*quoting Dietsch v. Schweiker*, 700 F.2d 865, 868 (2d. Cir. 1983)).

Under the Mandamus Act, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus jurisdiction may be appropriate where a claimant has no other means to compel the SSA to perform a perfunctory statutory duty or to apply its own nondiscretionary regulations and procedures." *Proco v. Saul*, 2021 WL 1131259 at *5 (N.D.N.Y. Feb. 22, 2021). The basic conditions required for mandamus jurisdiction are: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly denied and preemptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972). "Mandamus is an extraordinary remedy, available only in extraordinary circumstances." *Aref v. United States*, 452 F.3d 202, 206 (2d Cir. 2006).

**DISCUSSION**

Plaintiff filed a complaint and petition for a writ of mandamus in this Court on December 14, 2021, seeking an order to (1) expedite "the full amount of arrears and social security services

8

authorized by the" May 2021 Decision, Dkt. No. 1 at ECF p. 5; (2) provide that "all records of [Plaintiff] reflect his re-instatement of Social Security benefits and supplemental income retroactively," *id.*; (3) provide that "any outstanding payment for medical treatment, housing and other expenses are reviewed by the [SSA] and to be included in the awards as are necessary," *id.*; and (4) reinstate Simmons as representative payee of Plaintiff, *id.* at ECF pp. 8–9.

Defendant argues that this Court does not have jurisdiction to review internal agency administrative decisions regarding how the SSA decides to comply with the May 2021 Decision because the decision was fully favorable to Plaintiff and Plaintiff has not exhausted his administrative remedies "with respect to a request to increase the amount of his installment payments." Dkt. No. 20 at 1. Defendant further argues that the Court lacks jurisdiction over the SSA's decision not to increase the amount of the installment payments, to appoint a representative payee, and to order the SSA to update Plaintiff's paperwork, because they are administrative actions not subject to judicial review. *Id.* at 1, 8. Finally, Defendant argues that a grant of mandamus jurisdiction is an extraordinary remedy and Plaintiff has failed to meet the necessary conditions for such an expression of judicial power. *Id.* at 7–9.

**I.     Enforcement of the May 2021 Decision**

Plaintiff requests that the Court enforce the May 2021 Decision by requiring the SSA to pay Plaintiff the full amount of money owed in arrears. Dkt. No. 1 ¶ 9, ECF p. 5. Defendant argues that this Court does not have jurisdiction to review the May 2021 Decision because it was fully favorable to Plaintiff and Plaintiff did not fully exhaust his administrative remedies. Dkt. No. 20 at 6–7. Plaintiff counters that the Court has jurisdiction to review the May 2021 Decision because it was a "final determination," Dkt. No. 23 ¶ 19, and even though it was favorable, Defendant has failed to provide the relief accorded by the May 2021 Decision, *id.* ¶ 23.

9

SSA regulations dictate that payments of large sums "will be paid in not more than 3 installments and made at 6-month intervals." 20 C.F.R. § 416.545(b). The Act also provides the SSA with the option to increase the first and second installment payments by the amount of outstanding debt for food, clothing, shelter or other medical services and equipment. *See* 42 U.S.C. § 1383(a)(10)(B); 20 C.F.R. § 416.545(d)(1). These debts must be "documented." *See* POMS SI 02101.020 (S.S.A.). By letter dated September 17, 2021, Simmons, on behalf of Plaintiff, requested a "big amount" of the past-due payments, because Plaintiff "is suffering financial hardship d[ue] to pas[t] due debts: bills, rent, light and gas & etc." Dkt. No. 1 at ECF pp. 8–9. Plaintiff claims that he has "encountered serious debts for living conditions, food, shelter, dental and medical expenses." Dkt. No. 1 ¶ 14. Defendant argues that Plaintiff has not claimed that he provided documentation for his outstanding debts to the SSA. *See* Dkt. No. 1 at 8–9; Dkt. No. 20 at 11. The Court finds that it lacks jurisdiction to review the May 2021 Decision, including the decision to award Plaintiff back payments in three installments, because it was fully favorable to Plaintiff and Plaintiff failed to exhaust his administrative remedies.

The Second Circuit "ha[s] long held that our judicial review over Social Security determinations pursuant to 42 U.S.C § 405(g) 'makes no provision for judicial review of a determination favorable to the complainant.'" *Heller v. Commissioner of Soc. Sec.*, 328 F. App'x 74 (2d Cir. 2009) (quoting *Jones v. Califano*, 576 F.2d 12, 18 (2d Cir. 1978)); *see also Louis v. Comm'r of Soc. Sec.*, 349 F. App'x 576, 578 (2d Cir. 2009) (upholding district court decision that court lacked jurisdiction to review a fully favorable SSA decision). By Plaintiff's own acknowledgement, the May 2021 Decision was fully favorable. *See* Dkt. No. 1 at ECF p. 2 ("In this instant matter the decision was favorable."). The ALJ deemed Plaintiff disabled. *See* Dkt. No. 18-4 ¶ 18. As a result, the SSA initiated monthly payments and agreed to issue back

10

payment in three installments to compensate Plaintiff for the period during which he was not deemed disabled.  *See* Dkt. No. 18-5 at ECF pp. 2–3.  Because the decision was fully favorable, the Court lacks jurisdiction to review it.

The Court also lacks jurisdiction to review the decision because, contrary to Plaintiff's assertion, it was not a "final decision."  The Act provides for judicial review over decisions "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party."  42 U.S.C § 405(g).  Whether or not a decision is "final" depends on two components: "(1) a non-waivable requirement that a claim for benefits has been presented to the [SSA], and (2) a waivable requirement that the administrative remedies prescribed by the [SSA] have been exhausted."  *Iwachiw v. Massanari*, 125 F. App'x. 330, 331 (2d Cir. 2005).  To obtain a judicially reviewable "final decision" as construed by SSA regulations, *see Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (concluding that the definition of "final decision" has been "left to the [Commissioner] to flesh out by regulation"), a claimant must exhaust a four-step administrative process, *see Louis v. Comm'r of Soc. Sec.*, 2010 WL 743939, at *2 (S.D.N.Y. Mar. 2, 2010) ("Thus, before any person may bring an action in federal court regarding a decision about Social Security benefits, he must exhaust administrative remedies by securing a final decision from the Commissioner.").  This four-step process involves (1) an agency initial determination; (2) reconsideration; (3) hearing before an ALJ; and (4) Appeals Council review.  *See* 20 C.F.R. §§ 404.900, 416.1400.

The May 2021 Decision is not reviewable under Section 405(g) because it is not a "final decision."  Plaintiff presented a case to the SSA to receive benefits, *see* Dkt. No. 1 ¶¶ 1–2, and thus satisfied the non-waivable requirement for this Court's jurisdiction, *see e.g.*, *Jones*, 576 F.2d at 18 ("It is undisputed that appellants, by filing claims with the SSA, have satisfied the non-

waivable requirement."). However, Plaintiff failed to exhaust his administrative remedies, and Plaintiff has not presented facts to suggest that this requirement should be waived.

Any determination of an individual's "eligibility for" or "termination of" SSI benefits is considered an "initial determination." *See* 20 C.F.R § 416.1402(a), (b). The initial determination of Plaintiff's claim was made by the SSA through the July 12, 2019 letter informing Plaintiff that he did not meet the definition of disability for adults under the Act and that his benefits would be terminated on June 30, 2019. *See* Dkt. No. 18-2; *see also Okocha*, 2012 WL 6860892, at *14 (finding termination of SSI benefits constitutes an initial determination). Plaintiff also satisfied the second step in the administrative process, by filing a Request for Reconsideration of the decision denying him benefits. *See* Dkt. No. 18-3; *see also Okocha*, 2012 WL 6860892, at *14 (finding plaintiff had fulfilled the reconsideration step when he filed a "Request for Reconsideration"). Finally, Plaintiff satisfied the third step of the exhaustion requirement as a result of the hearing held before the ALJ, who rendered the May 2021 Decision overturning the initial determination that Plaintiff was not disabled. *See* Dkt. No. 18-5. However, Plaintiff has not satisfied the final step necessary for a decision to be deemed "final": Plaintiff, by his own admission, failed to appeal the May 2021 Decision to the Appeals Council. *See* Dkt. No. 1 ¶ 4. The May 2021 Decision thus is not "final" and not subject to judicial review. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("If a claimant fails to request review from the Appeals Council, there is no final decision and, as a result, no judicial review.").

In limited circumstances, the exhaustion requirement can be waived. *See Abbey v. Sullivan,* 978 F.2d 37, 44 (2d Cir.1992) ("Exhaustion is the rule, waiver the exception."). Exhaustion "may be waived either by the [Commissioner] or, in appropriate circumstances, by the courts." *City of New York*, 742 F.2d at 736. The Commissioner has not waived the

exhaustion requirement in this case.  A court may waive the exhaustion requirement when "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgement is inappropriate."  *Mathews v. Eldrige*, 424 U.S 319, 329 (1976).  In the context of social security benefits, the court should consider: "(1) whether the claim is collateral to a demand for benefits; (2) whether exhaustion would be futile; and (3) whether the plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies before obtaining relief."  *Abbey*, 978 F.2d at 44.  When determining whether exhaustion should be waived, "[n]o one element is critical to the resolution of the [exhaustion] issue; rather, a more general approach, balancing the competing considerations to arrive at a just result, is in order."  *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990).

      The Court cannot waive Plaintiff's failure to exhaust administrative remedies.  A claim is collateral to claims for benefits if the plaintiff "neither sought nor [is] awarded benefits in the District Court."  *Bowen*, 476 U.S. at 483; *see Jones*, 576 F.2d at 18 (2d Cir. 1996) (deeming constitutional challenge to the SSA's policy of reviewing claims collateral to claim for benefits).  Plaintiff's claim is not collateral to a demand for benefits—it is an express demand for his back payments to be expedited.  Nor would exhaustion of remedies be futile.  Courts have found exhaustion futile where the plaintiff seeks to challenge a regulation, as opposed to correcting an error in the administrative application of a regulation.  *See, e.g.*, *St. Francis Hospital v. Sebelius*, 2012 WL 2000841, at *6 (E.D.N.Y. June 5, 2012) (deeming exhaustion futile because plaintiffs challenged validity of regulations and while "mere deviation from the applicable regulations . . . [is] fully correctable upon subsequent administrative review, . . . the validity of the regulations and procedures themselves is a different matter" (internal quotation marks and citation omitted)).  "By contrast, the 'policies favoring exhaustion are most strongly implicated by actions . . .

challenging the *application* of concededly valid regulations' because SSA's 'expertise in administering its own regulations, [demands that it] ordinarily should be given the opportunity to review application of those regulations to a particular factual context.'" *Okocha*, 2012 WL 6860892, at *10 (emphasis in original) (quoting *Abbey*, 978 F.2d at 44–45). Plaintiff here challenges the application of the SSA's regulations governing the installment payment, which militates against excusing the exhaustion requirement. *See* Dkt. No. 1 at ECF p. 5.

Finally, Plaintiff would not suffer irreparable harm if required to exhaust his administrative remedies. Irreparable harm is a high bar "where the harm suffered in the interim would be irreparable in the sense that no *post hoc* relief would be adequate." *Smith v. Schweiker*, 709 F.2d 777, 780 (2d Cir. 1983). Generally, irreparable harm can be established when the termination or denial of benefits would subject a plaintiff to deteriorating physical health. *See Eldridge*, 424 U.S. at 331 (claimant must raise "at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments"); *Abbey*, 978 F.2d at 46 (concluding that "waiver may be appropriate" where "the delay attending exhaustion would subject claimants to deteriorating health"). Here, Plaintiff contends that he "will suffer irreparable harm and damage" because the three-year gap in disability payments "caus[e]d anxiety and stress that affects [Plaintiff's] disability." Dkt. No. 1 ¶ 18. However, Plaintiff is currently receiving SSI benefits and expects to receive the payments for the gap in coverage. This is not a case where Plaintiff faces a complete lack of coverage that would result in deteriorating health. Thus, the Court cannot waive the exhaustion requirement for the May 2021 Decision.

14

Because Plaintiff has not exhausted his administrative remedies, the Court is unable to review the SSA's decision to award Plaintiff back payments in three installments, each scheduled six months apart. *See Allen*, 2017 WL 1102665, at *2 (Plaintiff "does not allege in [his] complaint that [he] has exhausted [his] administrative remedies such that the Court has subject matter jurisdiction over [his installment payment] claim[]."). Plaintiff has likely received two of the three installment payments: The first payment was issued on February 12, 2022 and the second payment was scheduled to be issued in August 2022, though the record is silent as to whether this payment was made. *Id.*; Dkt. No. 18 ¶ 2(n). Though Plaintiff is entitled to one additional payment, the Court does not have jurisdiction to review the SSA's installment payment schedule.[2]

## II. Plaintiff's Other Requested Relief

Plaintiff also requests the reinstatement of Simmons as Plaintiff's representative payee and that the Court order the SSA to update his benefits records. Dkt. No. 1 at ECF pp. 5, 8–9. Defendant argues that the requested relief does not fall into the narrow category of agency actions that are reviewable by federal courts. Dkt. No. 20 at 8, 12. The Court finds that the relief requested by Plaintiff is not judicially reviewable.

### A. Reinstating Simmons as Plaintiff's Representative Payee

Plaintiff requests reinstatement of Simmons as representative payee of Plaintiff. Dkt. No. 1 at ECF pp. 8–9. Defendant argues that the Court lacks jurisdiction to do so because it is an administrative decision that is not subject to judicial review. Dkt. No. 20 at 12. The Court finds that Plaintiff's claim is non-judiciable.

---

[2] Plaintiff's conclusory argument that the SSA's decision was "final" does not alter this conclusion. *See* Dkt. No. 23 ¶ 19.

This Court does not have subject matter jurisdiction to review the selection of a representative payee for Plaintiff. The SSA's decision to deny Simmons application to be representative payee for Plaintiff at the time Plaintiff filed his complaint and petition for a writ of mandamus falls squarely into the category of non-reviewable agency decisions. *See* 20 CFR § 416.1403(a)(3) (stating that "[d]enial of a request to be made a representative payee" is not an "initial determination . . . subject to judicial review"); *see also Simons v. Comm'r of Soc. Sec.*, 2021 WL 4711324, at *10 (S.D.N.Y. Sept. 15, 2021), *report and recommendation adopted*, 2021 WL 4710815 (S.D.N.Y. Oct. 8, 2021) ("The denial of a request to be made a representative payee is not subject to the administrative review process or judicial review."). Additionally, Simmons, by Plaintiff's own acknowledgment, was successfully reinstated as representative payee of Plaintiff on June 28, 2022. *See* Dkt. No. 23 ¶ 17. Thus, Plaintiff's claim is moot and is dismissed under Rule 12(b)(1) motion.

**B.  Updating Plaintiff's Records to Reflect Benefits Reinstatement and Arrear Payments**

In her September 17, 2021 letter, Simmons, on behalf of Plaintiff, requested an award letter from the SSA, Dkt No. 1 at ECF ¶. 8–9, and in this action Plaintiff requests that "all records of [Plaintiff's] reflect his re-instatement of Social Security benefits and supplemental income retroactively," *id*. at ECF p. 5. Defendant argues that these actions are administrative actions not subject to judicial review. Dkt. No. 20 at 10.

Plaintiff first requests that this Court direct the SSA issue an award letter. This request is moot. The SSA sent to Plaintiff on August 13, 2021, detailing Plaintiff's reinstated monthly benefits, payment of his past-due benefits, and the payment schedule for both. Dkt. No. 18-5 at ECF pp. 2–3. Additionally, the SSA sent another award letter detailing Plaintiff's payment

schedule for prospective and past-due payments on February 15, 2022, after it received the necessary information to restart payments.  See Dkt. No. 18-8.

Next, Plaintiff requests that this Court direct the SSA to revise Plaintiff's records.  The Court, however, does not have the ability to require the SSA to revise administrative records.  The content of and process of updating agency paperwork falls squarely within the category of agency actions that are not reviewable; they are inherently related to the administration of agency affairs.  See 20 C.F.R §416.1403; *Dobson*, 2014 WL 1909363, at *8–9 (describing non-reviewable agency actions as those "related to the administration of SSA's affairs, not substantive determinations of a claimant's status and the nature of his benefits").  Therefore, this Court lacks jurisdiction to review the SSA's determination with respect to Plaintiff's records.

### III. Mandamus Jurisdiction

Plaintiff argues that the Court can exercise jurisdiction in this case because the Court has mandamus jurisdiction.  Plaintiff claims that mandamus jurisdiction is appropriate because he has a clear right to the awards granted in the May 2021 Decision, Dkt. No. 1 ¶¶ 4–5, Defendant has failed to expeditiously comply with that decision, *id.* ¶¶ 6–9, and immediate compliance with the May 2021 Decision is necessary to alleviate the harms suffered by Plaintiff while his SSI benefits were terminated, *id.* ¶¶ 14, 18.  Defendant counters that Plaintiff has failed to identify a non-discretionary duty owed by the SSA that has been "plainly denied" to him and has failed to demonstrate that he has "no other adequate remedy."  Dkt. No. 20 at 8–9 (citation omitted).

For a Court to exercise mandamus jurisdiction, there must be "(1) a clear right in the plaintiff to the relief sought; (2) a plainly denied and preemptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."  *Lovallo*, 468 F.2d at 343; *see also Heckler v. Ringer*, 466 U.S. 602, 616 ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only

17

if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty"). Plaintiff has not established a clear right either to a change in the distribution of back payments or to an alteration of Plaintiff's paperwork. As described above, any decision to update Plaintiff's paperwork would not represent an initial determination not reviewable administratively or by a court. *Dobson*, 2014 WL 1909363, at *13 (concluding that mandamus jurisdiction is inappropriate where the plaintiff is not entitled to administrative or judicial review). And the SSA's decision whether to increase the first and second installments to compensate Plaintiff for allowable debts and expenses appears to be discretionary. *See* 42 U.S.C. § 1383(a)(10)(B) (stating that these payments "*may* be increased by the total amount of" documented relevant debts and expenses (emphasis added)); 20 C.F.R. § 416.545(d)(1) (same). Even if the decision to increase the installment payments were not discretionary, Plaintiff has not demonstrated that he is entitled to the requested relief, which requires proof of permissible debts and expenses, and Plaintiff has not exhausted all remedies with respect to the May 2021 Decision. *See Escalera v. Comm'r of Soc. Sec.*, 457 F. App'x 4, 7 (2d Cir. 2011) (denying mandamus relief because plaintiff "did not prove that 'no other adequate remedy' (i.e., completing the administrative process) was available" (quoting *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir.2008))). Thus, mandamus jurisdiction is inappropriate in this case.

## IV.     Motion to Dismiss Under Rule 12(b)(6)

Finally, Plaintiff requests that "any outstanding payment for medical treatment, housing and other expenses [be] reviewed by the [SSA] and . . . included in the awards as are necessary." Dkt. No. 1 at ECF p. 5. This final claim sounds in damages. Defendant argues that damages are not contemplated by the Act and the Act does not create a private right of action and moves to dismiss for failure to state a claim. Dkt. No. 20 at 12–13. The Court finds that Plaintiff cannot state a claim for damages.

18

Congress never intended to include a cause of action for monetary damages in the Act. *See Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (holding that a "cause of action for money damages [under the SSA] . . . not having been included in the elaborate remedial scheme devised by Congress, is unavailable"); *see also Davis v. Comm'r of Soc. Sec.*, 2016 WL 3390586, at *5 (S.D.N.Y. Apr. 16, 2016) ("It is well-settled that the [SSA] itself does not bestow a private right of action for monetary relief."). Plaintiff's claim appears to be one for compensation for damages incurred during the administrative process, above and beyond the past-due payments to which Plaintiff is entitled. Although the Court sympathizes with Plaintiff's financial hardship, the Act does not create a separate cause of action for plaintiffs to claim monetary relief. *See Raitport v. Apfel*, 8 F. App'x 118, 122 (2d Cir. 2001) (finding claims requesting the SSA Commissioner pay electric bills until SSA paperwork is corrected frivolous). As such, this claim is not cognizable in this Court and is dismissed.

## CONCLUSION

Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim is GRANTED. Because the Court has dismissed this action, it does not address Defendant's motion for summary judgment, which was submitted in the alternative.

The Clerk of Court is respectfully directed to close Dkt. No. 14 and to close the case. The Court finds that any amendment would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.") (internal citations omitted); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (repleading would be futile when the "problem with [the pleader's] causes of action is substantive").

SO ORDERED.

Dated: February 1, 2023
      New York, New York

                                                      LEWIS J. LIMAN
                                          United States District Judge